Good morning, Your Honors, and may it please the Court, Brian Feldman for appellants. This appeal pits, Your Honors, a straightforward and long-standing interpretation of the Medicaid Act against a new and convoluted one. Subsection 1919G of the Act is entitled Survey and Certification Process, and the closet issues, excuse me, provides that surveys under this subsection shall be conducted by a registered professional nurse. For 30 years, the Department had rules that respected that language so that it meant what it said, that all surveys under that subsection required a registered nurse, which makes sense, because all surveys are subject to the same grading, A through L, which leads to the same serious survey consequences, and all deserve the same professional grader, a registered nurse. But in response to litigation, yes, Your Honor. Does it make sense for the investigation of complaints that may not have anything to do with a health concern? So, Your Honor, that is a very, very small subset. So if you look in the record at Joint Appendix 322 through 324, it turns out in New York there was zero such cases, excuse me, in 2021. And nationally, according to the Secretary's own statistics, only 1% of 16,000 surveys were non-health related. So that argument is not just the tail wagging the dog, but a flea on the tail wagging the dog. Congress, when they're drafting the statute, doesn't know exactly what percentages they're going to be. Why wouldn't that have been a reasonable consideration? That when you're not doing a survey for the year, an annual survey, that you would allow them, and they put language in there. It's not like they didn't speak to this at all. They had their own composition team in that particular subsection, right? 4 has its own composition team provision. So nothing, I'm sorry, Your Honor, nothing in G4 displaces the registered nurse rule. But to your point, the government presents this as a dichotomy between G2, which presents as the comprehensive surveys Your Honors are talking about in G4. But that dichotomy where it's issue specific, that dichotomy does not exist. If you look at G2, included in G2, the provision you're seeking to enforce here is within G2. It's not within G as a whole. It's underneath a bunch of provisions under G2, right? Right. And those G2 surveys also can be issue specific. And that's always been the case. Special surveys are in G2, not G4. In fact, it's the same. G2, on the G2 side, special surveys under 488, 308E, can either be a comprehensive standard survey or an issue specific abbreviated survey. The exact same is true for- I want to go back to G4. When it says a state may maintain and utilize a specialized team, including an attorney, an auditor, and appropriate healthcare professionals for the purpose of identifying, surveying, gathering, preserving evidence, why doesn't that more directly speak to that it's not mandatory, that it's discretionary? Because G4 is about resources. It says that states need to have the capacity to manage complaints and to monitor ongoing concerns. That's the top of G4. And the bottom provides a way to get more resources that they can maintain and utilize this specialized team. But you agree that that's not mandatory, right? That may is not a mandatory- They can have that process. They can have it. And, right, in G4, and you're telling us, notwithstanding that language, we should apply the mandatory language of G2. They argue that- wouldn't this be surplusage under your reading of the statute? It's not surplusage because there are many things beyond surveys the team's doing. And even with respect to surveys, there are two roles in the statute, as the secretary has always understood it, that are the roles of the G4 specialized team. One is triage, deciding when a complaint comes in. Does it trigger a survey? If so, should it be the full comprehensive survey or the abbreviated survey? What is a survey under G4? What does that consist of? There are no surveys under G4. G4 is a way to trigger a survey, and this is at 308- When it says surveying under G4, are there any requirements to how that's done, or none? No, because G4 doesn't define a survey. The surveys are defined in the section called surveys, which is G2. G4 is just a way to trigger- G4 talks about investigations and monitoring. Are you saying those are different categories of processes than surveys? They are- Yes, they are broader. They can include surveys, and this is, again, at 408- 488-308-F says when a investigation will trigger a survey. And the secretary has said, not all investigations include a survey, only if it's needed. And then the decision has to be made. Will it be a comprehensive survey, a standard, or an abbreviated? The same choice that needs to be made for a special- So under G4, if they're gathering and preserving evidence, you would say under that provision, they don't need a healthcare professional, registered nurse, or any healthcare professional. But if they're doing a survey with respect to a complaint, they do? That's the way you're reading that? Because that's covered by this subsection, the term this subsection in G2. What's the difference between gathering and preserving evidence in a survey? What's the difference? Well, if there is a complaint about abuse, for instance, that requires a different process under the statute, they could gather evidence. If there's an enforcement process that an attorney could be part of, that's there. Let me just point the court, this is important too, what the government cites as their long-standing interpretation on page 9 of the brief, which is the state operations manual, section 5300, because it provides the same two things that G4 does, the specialized team. One is the triage, the first paragraph of that manual says deciding whether there's a survey, what kind of survey. And the second is... Just so I understand that, you're saying that as a matter of practice, there can be a team that comes in to determine whether evidence needs to be preserved that does not include a registered nurse, that then determines whether a survey should happen that does include a registered nurse. Is that what you're saying? Why G4 isn't surplusage? Yes, there's an investigation team, a specialized team, that gets to decide whether or not there will be a survey. And 308F at USVE says that team will have a survey if and only if a survey is necessary. What is that called and how often does it happen? That's the process that you're describing? That is a complaint investigation and the rules that we cite, including the 1994 rulemaking, the secretary says not every complaint investigation is going to require a survey. That would require too many resources. Just if I could read section 5300, the other thing this team can do is assist. And 5300 says, quote, a specialized team is not necessarily comprised of qualified surveyors, but team members provide unique talents and expertise to assist at least one qualified surveyor. And it then points to chapter seven of that manual, which says that a registered nurse is required. Can I ask a tangential question? Is the issue of Chevron deference involved in this appeal? I miss the end of your question, your honor. Is Chevron deference, the issue of Chevron deference, is that before us on this appeal? Yes, it is, your honor. We submit that there's no plain reading of this statute. In fact, the government the last time we were up here conceded that, in which the government would prevail given the very clear term of this subsection in the five Supreme Court cases that have reviewed it the same way. But on the subsection issue, though, I don't, there are other parts of the act where G2, G2, what you're claiming should be a paragraph, right? You're claiming that if they were referring to G2, they would use the word paragraph instead of subsection. Subsection in your standard terminology is all of G, right? That's your argument. Under the standard terminology, when Congress uses subsection, it means all of G, right? That is correct. So why would we conclude that when Congress, at other points in the exact statute, two times that the government cites, uses G2, G2, and calls it a subsection? And there are other provisions, five other times where they used something that you would call paragraph, they call it a subsection. So why would we give any weight to that term? Thank you, your honor, for the question. That shorthanding is a feature, not a bug, of a precise hierarchy, statutory hierarchy. If you look at all five cases we cite, Reno, Coons, Southwest General, Sion, and Rubin, that is true in every single one of those. In the statute that the Supreme Court is looking at. You don't think that's an inconsistent use of the term? Absolutely not. Chief Justice Roberts, in fact, uses the example of, quote, subsection A1. That's a paragraph, A1, not a subsection. The Chief Justice says that's the way to be precise. The Chief Justice in Southwest General also says this statute, 3345, which uses that shorthand, subsection A1 paragraph, is adopting the hierarchy of the House and Senate drafting manuals. All the hierarchy is is the organization, section, subsection, paragraph, subparagraph. Going back to Judge Sack's question in deciding whether or not we need to use Chevron, we're allowed to consider canons of statutory construction. Before we would consider Chevron, if we think there's surplusage, for example, we could decide that ourselves. We don't have to, right? That's right. If this court were to affirm under Chevron, we'd ask it to wait for the Supreme Court's decision. No, no, no. I'm saying we don't. If we think the part of the tools that we can use include canons of construction, do you agree with that or not? Yes, Your Honor. All right. Yes, yes. And the court should exhaust those canons before turning to deference. I see my time has expired. I believe my time has expired. It's going up. It has expired, but you have three minutes in rebuttal, so you're okay. Thank you, Your Honor. All right. Thanks. Appreciate it. All right. We'll hear from Mr. Connolly. Good morning, and may it please the Court. Christopher Connolly from the United States Attorney's Office on behalf of the government. The final rule issued by the Department of Health and Human Services is lawful because it is consistent with the language of the Medicaid Act. The rule confirms what the Act's text, structure, and context makes clear. State survey teams conducting comprehensive annual surveys of nursing facilities must include a registered nurse. But when a state conducts a survey as part of an ad hoc investigation into a specific complaint, the state has flexibility to staff its survey team based on the nature of the complaint being investigated. The traditional canons of statutory interpretation fully support agency. Are you kind of drawing the distinction as being one between surveys and inspections?  Well, what G4 contemplates is a range of activities that a state can undertake in response to a complaint in order to investigate a complaint. And one of those activities is conducting an actual survey. The other elements of G4 might fall, in certain circumstances, outside the scope of surveying. But all of those activities under the plain language of G4 are subject to the same team composition requirement, which is permissive. Why couldn't it be what they're suggesting, which is all these other aspects, like Judge Park was asking this as well. If you're gathering and preserving evidence, you don't need a registered nurse. But once you opt for the survey, then that provision kicks in. Why would that be an unreasonable reading, a reconciliation of the two clauses? Because, put simply, that's not what G4 says. I mean, G4 is clear that the state may maintain and utilize a specialized team for the purpose of surveying. And the specific composition of that team, they give the examples of an attorney or an auditor or an appropriate healthcare professional, which is broader than just a registered nurse. Surveying is just one of the things that G4 talks about, though, and it seems broader. And as long as there's no overlap, then it wouldn't be surplusage. Would you agree with that? I'm sorry, Judge Park. Let me just make sure I have your... G4, you were talking about G4 as if it was just surveys, another description of surveys. But as I read it, it describes gathering and preserving evidence and enforcement actions, investigations, as well as surveys. And so it seems as long as there's something that goes beyond surveys that's encompassed by G4, then that would not be surplusage under your adversary's reading. Well, what they're attempting to do is graph those requirements of G2 onto G4. But again, the language of G4 does not provide for that specific requirement. And if you were to read that specific requirement into G4's discussion of surveying, then it would give no effect to the language in G4 providing for the option of using a specialized team and the broader requirement of appropriation. The option would be you could use your own, you could decide what your specialized team in every other situation in the list of things that you would do under G4 other than surveying. That would be not reading this clause out. That would just be limiting this clause, right? It would be a way of arguably getting around the surplusage. Again, respectfully, G4 should be read to mean what it says, which is that states can undertake surveys using appropriate health care professionals. And moreover, looking, pulling back a little bit more broadly in terms of the text and the context of these provisions, the district court was right that what Congress is doing here, just based on the structure and the context and the language, is two separate things. In G2, you were talking about comprehensive yearly evaluations, and there are all sorts of requirements that G2 sets out for those. When they have to happen, what they have to look at, and in the context of a registered nurse, who has to be on the survey team. But G4 is different. We're talking about investigations of ad hoc complaints that could arise at any time, that could involve any number of possible issues. And reading G4's language to mean what it says, that in those circumstances, states have the flexibility to organize their teams, is consistent with that broader structure and purpose of G2 versus G4. Can I ask you about your argument that the statute uses cross-references inconsistently? Yes. My understanding is that before, I guess back at the time when the Medicaid Act was drafted, Congress, the manual for style was that, required it to use the highest level subdivision when referencing a particular subdivision. So if it was G2, you would still call it a subsection and not a paragraph. And that has since changed. Does that, would that change your argument? Is that, do you know what I'm talking about? I understand what you're saying, Your Honor. I think it would not change the argument for a couple of reasons. First of all, I mean, just again, looking at this language, as Judge Bianco pointed out, there are multiple instances where G2 itself is referred to as a subsection. Let's, I mean, can you point me to those? So I'm looking at page 21 of your brief. And I think what I'm trying to say is that the way I understand the drafting at the time was that there is no inconsistency. And in fact, it's perfectly consistent with how they were supposed to draft at the time, which has since changed. But so the examples you give are subsection, you know, F4 or F5. Today, we would call those paragraphs. Right. But in fact, at the time, what they did was they used the highest level subdivision. So F was what it started with. So the word that's closest to the first thing in parentheses is a subsection. So they call everything afterwards a subsection. Right. So in that, if that's right, is there any place where there's an inconsistency in the section? If that, if that were right, then I guess it would make sense to refer to G2 periodically as a subsection. But even if that were the case. I mean, shouldn't we give Congress the benefit of the doubt that they in fact know how they're drafting these things? You, that, that is one consideration out of, out of multiple considerations that the Court would need to look at. In all of the cases that the parties discuss, all of the Supreme Court cases that discuss the hierarchical nomenclature, the Court never relies simply on the fact that, that Congress said section or subsection. It, it notes that, but it proceeds to look more broadly at the text and context to, to determine whether giving that term its ordinary, its ordinary meaning makes sense within the broader structure of the statute. So even if, even if the Court were to, I guess, allow for the fact that G2 is referred to as a subsection at times, you still need to look at the broader text and context. And why would you, why would you do that? The text would be clear under what I just described. That if G2 in fact means subsection, then why would we go beyond the text? Because, because that's what the Supreme Court teaches in those cases. In other words, looking at the hierarchical nomenclature is one thing that you can do. But even when the Supreme Court seemed satisfied that they were using the, the, the nomenclature in the way that the drafting manual was used, it still proceeded to look at the other canons of, of statutory interpretation. Such as, such as surplusage, such as just the way the, the, the statute is structured and, and the way that the titles and so forth give us clues as to what Congress was attempting to do. And when you look at G4 and G2 in, in that context, that broader context, there is the distinction between what G2 is attempting to accomplish with comprehensive annual surveys and what it requires for those comprehensive annual surveys. And what G4 is attempting to accomplish with the, the flexibility provided the states for the ad hoc investigation of, of complaints. And so in, in, in either reading, the canons of statutory construction point in favor of the government's interpretation of, of G4 and G2. I, I have a different question. If you could just help me understand what's actually going on here. Why is it that the nursing facilities want a registered nurse on every survey team? Why do the nursing facilities want? Correct. Correct. It seems like they're asking for more regulation. And I just made this a stupid question. It, it, it would seem that way. I, I, I suppose Mr. Feldman might be in a better position to articulate what they're, what they're looking for. I mean, certainly from HHS's perspective, the importance of giving states the flexibility to, to, to staff their, their complaint investigation teams with, with a little more wiggle room is made clear in the official commentary to the final rule. Which is, this makes it more efficient and more effective for the states to investigate complaints, which is obviously important. And these comprehensive annual surveys, they're going to come up within 12 to 15 months. They're going to cover the exact same things every time. That's, that's what G2 says. But G4, these complaints could be coming in at any time. They could, they could address any number of, of potential issues. And the most efficient and effective way for states to investigate those issues is to have this flexibility in the composition of the survey teams. If we, if we were to conclude that it was ambiguous, is the government's position that we should wait for the Supreme Court to decide the two cases pending regarding Chevron deference? Respectfully, Your Honor, no. Because Chevron remains good law. And this court within the last, I think, week or two in Wong v. Garland applied Chevron deference and acknowledged that it remained good law that was binding on this court. And so if, if the court were to proceed to Chevron deference for the reasons set forth in our brief, if, if the language here is ambiguous, the, the HHS's interpretation is reasonable and it's supported by valid considerations. They, they pointed to Judge Katzmann at the prior oral arguments suggested that something like subsection, what subsection means. Right. That Chevron deference, even under current law, may not even apply to that. What's your response to that? Respectfully, this case does not turn on the meaning of subsection. It, it turns on the structure and the context and the operation of the statute as a whole. And the, the use of subsection in G2 is, is part of that analysis, but it doesn't begin and end with that analysis. And the Supreme Court case law teaches that because the, the nomenclature is not the beginning and the end of that analysis. The broader canons of statutory construction still come into play. I also, I just want to ask you about the, they say conflicting use of abbreviated, an abbreviated survey. The district court addressed this, but do you want to address that? You're basically, the government's basically arguing that means two different things. I, I certainly can, Your Honor. And no, the, what the use of abbreviated standard survey in the statute is wholly consistent with the discussion of abbreviated, abbreviated standard surveys in the regulation. When, in, in G2, when, when the term abbreviated standard survey is used, that's in a, in a, a part of the, of G2 called frequency. And what they're talking about is how often these comprehensive surveys have to take place. And they say every 12 to 15 months. But then it says, if you have essentially a change in leadership at the nursing home, a new director of nursing, a change in ownership or something like that, then you can go back and do a standard survey or an abbreviated standard survey to check to make sure that the quality of care hasn't declined as the result of the change in leadership. So they're talking about timing there. But what an abbreviated standard survey is, is it's, it's something less than a standard survey, right? It doesn't run the gamut of, of topics that a survey might otherwise, might otherwise take in. And what the regulations say is you can do that when there's a change in leadership, an abbreviated standard survey. You can also conduct an abbreviated standard survey in response to a complaint, which makes sense because a complaint is, is unlikely to, to implicate kind of the full scope of issues you might otherwise be looking at. And so you can do a narrow survey, a narrower survey for, for those circumstances as well. All right. All right, thank you. Thank you. Okay, Mr. Connell, you have three minutes in the report. Thank you, Your Honor. The government says this case doesn't turn on the meaning of this subsection. But every case cited by the parties resolving the meaning of either this subsection or this section, where the courts construed that it meant what it said, turned entirely on the meaning of this subsection. They don't have a case going the other way in which this subsection means in plain text what it, what it says as it does here, and yet other parts of the statute shift the court's analysis. All of the cases go the same way. And if you look at the Medicaid Act Section 1919, there are 19 times in the statute where this subsection is used. The government's view is they, is that Congress used it right 18 times, but got it wrong just this once. That's not tenable. In fact, if you look at the statute at this sub, this clause, Clause 1, which uses under this subsection, Clause 2 also uses under this subsection. It's for the conflict of interest provisions for surveyors. Clause 3 is the contrast. It shows what Congress would have done if they wanted the government's view of this case. It says standard and extended surveys under this subsection. Those are the comprehensive surveys. That's the only place there's a dichotomy between the comprehensive and the issue specific. Otherwise, G2 and G4 both allow both. The government's interpretation, in addition, does serious damage to the statute. Not only does it overrun the term this subsection in one out of 19 places, but it invents a new abbreviated standard survey definition. It removes the requirement for registered nurses on the federal government's validation surveys. They're do-over surveys to see, using the state's procedures, what went right, what went wrong. They say the language in that provision that says, use the same survey protocols as the state is required to do under Paragraph 2, that that would suffice. And that is wrong, and we have a note in our brief about that. Survey protocols is separate and apart from the survey team composition, and it's a different part of the statute, Your Honor. It would also remove the conflict of interest provisions from complaint surveys, revisit surveys, and validation surveys. Meaning, a survey team could have the owner of the facility responding to a complaint about the facility that could not be what Congress would. But the government, in their brief, cites to other provisions that they say would impose those, both conflict of interest and training requirements. Are they wrong about that? That's by the grace of the Secretary, like this one. It's been true for 30 years. It could change tomorrow. That's not evidence about what Congress would have intended. To the question that the Court asked about why the facilities are here asking for a registered nurse, it's the same reason that the AMDA brief is in. It is to ensure quality in the grading. The Avon case that preceded this was a case in which the ALJ found that the bad quality survey hurt the residents, which hurts the facility. Basically, the corrective action plan prohibited hot soup and hot coffees for residents at the facility. Bad surveys without RNs can lead to bad results. That's why they're here. Finally, Your Honor, to your question, Judge, about what should happen with the Supreme Court Chevron cases. We submit, if the Court is inclined to take this as a Chevron matter, you should wait for Loper, and you should wait for Relentless for two reasons. First, because of the question that was asked last time around by Judge Katzman, which is up for grabs at the Supreme Court, does Chevron mean an agency can determine what subsection means? We submit the answer is going to be no, most likely. The second is the other issue that got a lot of play in the arguments of the Supreme Court, which was Brand X. Brand X is the Supreme Court decision that gives an agency the ability to change its mind 30 years later, as it did here. That's directly in play, because for the government to prevail, they're going to have to say that Brand X is still the law, notwithstanding 30 years saying a registered nurse had to be on a complaint survey. It's no longer required now. I would point out in passing that if we depend on Chevron deference in an opinion that we write, the chances that our opinion would come out before the Supreme Court decides that Chevron is far-fetched. We appreciate the point, Your Honor. All right. Thank you both. Thank you for coming in. We'll reserve decision. Have a good day. Thank you, Your Honor.